UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 08-171 RHK/AJB

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Petitioner. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| v. | ) | |
| | ) | |
| MAURICE RILEY, | ) | |
| | ) | |
| Respondent. | ) | |

The above-entitled matter came on for hearing before the undersigned Magistrate Judge on February 25, 2008, at the Federal Medical Center ("FMC") in Rochester, Minnesota. The United States petitions this Court pursuant to 18 U.S.C. § 4245 to determine the present mental condition of Respondent Maurice Riley. Petitioner seeks an Order committing Respondent to the mental health unit at FMC-Rochester for appropriate custody, care and treatment. Assistant Federal Public Defender Katherine Menendez represented Respondent, who was present throughout the hearing. Assistant United States Attorney Lonnie Bryan appeared on behalf of the United States.

The matter is before the undersigned Magistrate Judge for a Report and Recommendation pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B). Upon the following Findings of Fact and Conclusions of Law, it is recommended that:

1. The Petition to Determine Present Mental Condition of an Imprisoned Person Under 18 U.S.C. § 4245 [Docket No. 1] be granted;

2. Respondent be found to be suffering from a mental disease or defect for the treatment of which he is in need of hospitalization in a suitable psychiatric facility; and

3. FMC-Rochester be deemed a suitable facility at which to treat Respondent's mental illness.

## FINDINGS AND CONCLUSIONS

### I. APPLICABLE LAW

Under 18 U.S.C. § 4245, a prisoner who is serving time in a federal prison may not be committed to a mental hospital for care and treatment without the prisoner's consent or a court order. See 18 U.S.C. § 4245; United States v. Watson, 893 F.2d 970, 975 (8th Cir. 1990)(vacated in part on other grounds by United States v. Holmes, 900 F.2d 1322 (8th Cir. 1990)). If the prisoner objects to being committed, the court must order a hearing to determine if there is "reasonable cause to believe that the person may presently be suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility." 18 U.S.C. § 4245(a); United States v. Jones, 811 F.2d 444, 447 (8th Cir. 1987).

"If, after the hearing, the court finds by a preponderance of the evidence that the person is presently suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility, the court shall commit the person to the custody of the Attorney General." 18 U.S.C. § 4245(d). The Attorney General must then

hospitalize the prisoner "for treatment in a suitable facility until he is no longer in need of such custody for care or treatment or until the expiration of the sentence of imprisonment, whichever occurs earlier." Id.

In summary, the Court is required to answer three questions: "Is the Respondent suffering from a mental disease or defect?  If so, is the Respondent in need of custody for care or treatment of that disease or defect?  If so, is the proposed facility a suitable facility?" United States v. Horne, 955 F. Supp. 1141, 1144 (D. Minn. 1997).

## II.  APPLICATION TO RESPONDENT

### A.  Stipulations.

At the hearing, Daniel Shine, M.D.,  a staff psychiatrist at FMC-Rochester, testified on behalf of the United States.  No witnesses testified on behalf of Respondent.  While expert evidence is weighed by the fact finder, where expert testimony is required to establish a fact and it is not contradicted or there are not other grounds to doubt its accuracy, the fact should be deemed established.  Franklin Supply Co. v. Tolman, 454 F.2d 1059, 1071 (9th Cir. 1971); Jenkins by Agyei v. State of Missouri, 807 F.2d 657, 708 n.17 (8th Cir. 1986)("arbitrary for the court to reject it and inject its own inferences"); Ware v. Director, Office of Workers' Compensation Programs, 814 F.2d 514, 516 (8th Cir. 1987)(fact finder may not use studies to form his own medical opinion); *See also* United States v. Prestenbach, 168 F.3d 496 (8th Cir. 1999)(table).

In addition to the testimony of Dr. Shine, based on the stipulation of the parties, the Court admitted into evidence the following exhibits:

     Exhibit A        Sentencing Information

     Exhibit B        Psychiatric Evaluation

     Exhibit C        Medical Records,   MED_1 to 340

     Exhibit D        Additional Medical Records since February 19, 2008, MED_341-412

     Exhibit E        Central File,   CF_000001 to 000330

     Exhibit F        Curriculum Vitae for Daniel Shine

     **B.**       **Respondent is Suffering From a Mental Disease or Defect**

Respondent is an African American male who is serving a 210-month sentence for Conspiracy to Distribute Narcotics (Cocaine and Crack). His projected release date is February 19, 2013. He was transferred from the Federal Prison Camp (FPC), Atlanta, Georgia, to the Federal Medical Center (FMC), Rochester, Minnesota, on February 27, 2007, and was designated to general population, work cadre. On July 26, 2007, he was transferred to the Special Housing Unit (SHU) where he has since been housed.

    Dr. Shine has diagnosed Respondent as having a delusional disorder, persecutory type. Exhibit B. Respondent's delusions are non bizarre and fixed. He fears for the safety of his son and himself, which are plausible concerns. He also believes that the sentencing judge has issued an order for his release. There is no evidence, however, of such an order. Moreover, on July 12, 2007, he was found at the prison gate and stated that he was not on the count (prison inmate roster). Even when challenged with a copy of the prison roster that contained his name, he persisted in his belief that a judge had ordered his release. He refused to cooperate with the officer, who requested assistance and immediate force was used to place

Respondent in SHU. As a result, an officer's hand was broken. Respondent was charged with two counts of assault and one of escape. CF 61-7. Despite the incident, Respondent has maintained that a release order exists even when confronted with the sentencing court's judgment of conviction and sentencing order.

Respondent's central file contains a report of an incident in 2006, when, while he was imprisoned at FCI Jessup, Respondent wrote:

> I, Maurice Riley, ask for help concerning my life and my families and love [sic] ones...Jack said don't leave until your DEAD, and its not my family member Jack. I'am [sic] leaving here within the next couple of days because my life is in danger and my family members and love [sic] ones, I will be leaving the right way out of the front or on a stretcher because ram [sic] being set up with a Criminal Case that I have nothing to do with..."

Exhibit B at 2; CF 22-23   When questioned about the note, he responded in a delusional way that indicated he thought he was leaving the institution. Later that day, staff observed the inmate wearing earplugs, at which time, he did not respond in a delusional way. According to Dr. Shine, the incident suggests that Respondent was responding to an auditory delusion.

Respondent has not cooperated with mental health treatment. He declined the offer of psychological testing and, but for two short conversations with Dr. Shine, declined to participate individual therapy. Respondent maintains he is not mentally ill and Dr. Shine is psychotic. MED 311. While the interaction has been limited it is sufficient, when combined with review of the medical record, for Dr. Shine to express his opinions to a reasonable degree of certainty. Dr. Shine's colleagues concur in his diagnosis. The Court finds that Dr. Shine is

a credible witness, based on both his expertise[1] and understanding of Respondent's mental health status.

The most significant expression of Respondent's delusions is in a written report by Respondent. In the report, Respondent writes about having "state eyes" placed in his head while in Minnesota and more than 1000 attempts to remove a lock on his head. Med 344. Likewise, Respondent's writing states a belief in having cleared a "fed, state and faith (adventist)" system, MED 343-344, a "mob hold" can stop a court order releasing him for only one year, MED 353, and, he has been placed in "another system under a mind hit by satellite." MED 343.

As Dr. Shine explained, unlike the likelihood of an onset of Schizophrenia, delusional disorder may present at any time between 17 and 70 years old. I find that Respondent suffers from a mental illness.

**B.     Respondent is in Need of Custody for Care of Treatment**

Although 18 U.S.C. § 4245(d) does not define when a prisoner is "in need of custody for care or treatment," courts have found that prisoners are "in need" of treatment under 18 U.S.C. § 4245 where a diagnosis is properly supported by psychological or psychiatric testimony. Horne, 955 F. Supp. at 1146; United States v. Eckerson, 299 F.3d 913, 914 (8th Cir. 2002)(applying the legal standard for determining when an inmate is in need of treatment adopted in Horne).

---

[1] The parties stipulated to Dr. Shine's qualification and background. His curriculum vitae was accepted into evidence based upon stipulation by the parties as Government's Exhibit F.

"[I]f a prisoner whose mental illness was left untreated would pose a danger to himself or others if placed in the general prison population, . . . treatment is needed within the meaning of 18 U.S.C. § 4245." <u>Horne</u>, 955 F. Supp. at 1149.  A finding of dangerousness, however, is not required.  <u>United States v. Akere</u>, 14 Fed. Appx. 292, 293-94 (4th Cir. 2001)(finding no support in 18 U.S.C. § 4245 or the court's precedent for the proposition that the inmate could not be committed to a mental health facility without a finding of dangerousness).  Deeming an inmate in "need of treatment" is appropriate where that inmate is unable to function in the general population of a prison because of a mental disease or defect.  <u>Horne</u>, 955 F. Supp. at 1149.

Respondent is unable to function in the general population and has been placed in Special Housing Unit because his delusion leads him to disregard prison boundaries.  CF 53 & 61.  While in the general population his delusion inspired him to approach a prison boundary, risk lethal force and injure an officer.  Consequently, though he is not generally violent and medical records report that he has been quiet, Respondent's delusion puts him at risk of bodily injury and death.  In addition, Dr. Shine testified  Respondent is in need of treatment and that it will be more than merely beneficial.

There are questions about the effectiveness of current drug therapies to treat delusional disorder.  Although these concerns are irrelevant to the instant case, *see* <u>United States v. Horne</u>, 955 F.Supp. 1141,  1152 (D.Minn. 1997),  commitment will also provide Respondent an opportunity to participate in individual and group therapy available.  Moreover, according to Dr. Shine, a recent study at FCI Butner found that the majority of inmates suffering from

delusional disorder improve after a 3-4 months of treatment. Finally, Respondent's symptoms abated when emergently medicated on July 27, 2008, and spoke to Dr. Shine for 30 minutes, unlike his prior dismissal of talk therapies. MED 121, 124, 137.  Hence, the Court agrees with dr. Shine's opinion that commitment will be more than merely beneficial for Respondent.

Based on the records and testimony introduced at the February 25, 2008 hearing, the Court concurs with the opinions expressed by Dr. Shine.  The Court concludes, therefore, that Respondent is in need of custody for care and treatment.

### C.     FMC-Rochester is a Suitable Facility

The Court finds that FMC-Rochester is a suitable facility for Respondent to receive care or treatment.  FMC-Rochester is a fully accredited hospital providing a wide range of medical and therapeutic options for incarcerated inmates.  Dr. Shine testified that Respondent could not get the mental health attention that he needs at a regular prison facility and that Respondent's prognosis is good with the types of treatment offered by FMC-Rochester.  There having been no evidence offered to contradict this testimony, this Court recommends that Respondent receive his care and treatment at FMC-Rochester.

**RECOMMENDATION**

For the reasons set forth above, it is recommended that:

1. The Petition to Determine Present Mental Condition of an Imprisoned Person Under 18 U.S.C. § 4245 [Docket No. 1] be granted;

2. Respondent be found to be suffering from a mental disease or defect for the treatment of which he is in need of hospitalization in a suitable psychiatric facility;

3. FMC-Rochester be deemed a suitable facility at which to treat Respondent's mental illness;

4. Respondent be committed to the custody of the United States Attorney General; and

5. The Attorney General hospitalize Respondent at FMC-Rochester.


Dated:   March 4, 2008


   s/Arthur J. Boylan
ARTHUR J. BOYLAN
United States Magistrate Judge


Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before March 18, 2008 a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.